UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD L. GONZALEZ,

      Plaintiff,

v.                           CASE No. 8:07-CV-1704-T-30TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security does not explain adequately the apparent rejection of a treating psychiatrist's opinions, I recommend that the decision be reversed and the matter remanded for further consideration.

I.

The plaintiff, who was forty-six years old at the time of the administrative hearings, has the equivalent of a high school education and two

---

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

years of college (Tr. 488-89).[2] He has previously worked as a minister, sales representative, certified nurses' assistant, and a drug and alcohol abuse counselor (Tr. 67). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled in June 2003, due to a right leg injury (non-union fracture), hepatitis C, and liver dysfunction (Tr. 70). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff suffers from severe impairments of status post right leg fracture and chronic liver disease (Hepatitis C) (Tr. 28). He concluded that these impairments restricted the plaintiff to light work that does not involve unprotected heights and allows him the option to sit or stand (Tr. 37).[3] Based upon the testimony of a vocational expert, the law judge determined that these limitations did not

---

[2]The administrative hearing on July 14, 2005, was supplemented by a hearing on December 1, 2005, at which time the vocational expert testified (Tr. 480, 512).

[3]It is noted that the hypothetical question upon which the vocational expert's testimony is based also included the following additional limitations: only occasional postural activities, no hazardous machinery, no frequent climbing or walking or lifting heavy objects, no exposure to sunlight, and no work outdoors on a frequent basis (Tr. 524).

preclude the plaintiff's return to prior work as a minister or drug and alcohol abuse counselor (Tr. 38-39).[4] Alternatively, the law judge found, based upon the vocational expert's testimony, that there are other jobs available in significant numbers in the national economy that the plaintiff could perform, such as, at the light exertional level, small products assembler, inspector/packer, and cashier, and, at the sedentary exertional level, telemarketer, packer, and ticket seller (Tr. 38, 40). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 40). The Appeals Council let the law judge's decision stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A),

---

[4]The law judge misstated the vocational expert's testimony on this point. Thus, the vocational expert stated that, if the plaintiff needed a sit/stand option, he could not do any of his past work (Tr. 525). However, this error is harmless because the law judge alternatively found that there were other jobs in the national economy that the plaintiff could perform.

1382c(a)(3)(A).  A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).  The Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).  In this case, also, the plaintiff must show that he became disabled before his insured status expired on December 30, 2003 (Tr. 27), in order to receive disability benefits.  42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.  There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.  42 U.S.C. 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made

by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff alleges that he is disabled from a combination of physical impairments and a mental impairment of bipolar disorder. The law judge found that the plaintiff has physical impairments that restricted him to a range of light work, but that he did not have a severe mental impairment (Tr. 39). The plaintiff argues that the law judge's decision fails to consider his diagnoses of bipolar disorder and porphyria cutanea tarda, a skin condition (Doc. 15). The plaintiff also argues that the law judge did not provide an adequate explanation for rejecting his subjective complaints (<u>id</u>.). The plaintiff's contention that the law judge did not explain adequately the discounting of his mental impairment has merit and warrants a remand.

The law judge found that the plaintiff suffers from depression, but he did not find it to be a severe mental impairment (Tr. 36, 37). The plaintiff challenges this finding on the basis that the law judge improperly rejected the opinion of the plaintiff's treating psychiatrist that the plaintiff

suffers from bipolar disorder, which substantially impairs his functioning (Doc. 15, pp. 2-6, 9-11).

Dr. Joel Gleason, a psychiatrist with the Suncoast Center for Community Health, Inc., has treated the plaintiff since December 15, 2003 (Tr. 320). Although he initially diagnosed the plaintiff as suffering from adjustment disorder with depressed mood, Dr. Gleason subsequently opined that a diagnosis of bipolar disorder was appropriate (Tr. 314, 321). Dr. Gleason's progress notes reflect that the plaintiff has experienced depression, "racing thoughts," paranoia, hallucinations, and insomnia (see Tr. 151, 277, 279, 297, 317, 387). He has prescribed the plaintiff numerous medications for his mental impairments, including lithium, trazadone, and risperdal (see, e.g., Tr. 275-76). Over a period exceeding two years, Dr. Gleason has consistently assigned the plaintiff Global Assessment of Functioning ("GAF") scores between 50-55, which reflect moderate to serious symptoms or impairment in social or occupational functioning. Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34 (see, e.g., Tr. 277, 278, 279, 283, 290, 302, 317).

The law judge is required to give substantial or considerable weight to Dr. Gleason's opinion, as a treating physician, unless there was good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). However, the law judge "must clearly articulate the reasons for giving less weight to the opinion of a treating physician...." Id.[5]

Although the law judge acknowledged Dr. Gleason's treatment of the plaintiff (Tr. 32-33), he obviously rejected Dr. Gleason's opinions, as he did not find that the plaintiff suffered from bipolar disorder, or even that

---

[5]The Commissioner argues that "the opinions of non-examining medical sources may override opinions from treating sources, provided that the non-examining source's opinion is supported by the record" (Doc. 16, p. 7, citing 20 C.F.R. 404. 1527(d), (f)). However, it is well-established in Eleventh Circuit law and the regulations that, before a non-examining source's opinion may be given controlling weight, the opinions of the treating physician must be properly rejected. Mills v. Astrue, 2007 WL 979925 at *6 (11th Cir. 2007)(If the law judge does not give the treating doctor's opinion substantial weight, "he must show good cause by clearly articulating reasons that are supported by the evidence."): 20 C.F.R. 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

the plaintiff suffered from a severe mental impairment.  Dr. Gleason's

opinions are reflected most significantly in his GAF scores. The law judge,

however, did not expressly state he was rejecting Dr. Gleason's opinions,

including the GAF scores, much less explain why he rejected those opinions.

See Lewis v. Callahan, supra, 125 F.3d at 1440.

The law judge seems to suggest that he rejected Dr. Gleason's

bipolar disorder diagnosis based on the opinion of one-time consulting

examiner, psychologist Dr. Linda Appenfeldt, who opined (without

discussion) that the plaintiff did not fully meet the criteria for bipolar disorder

at the time of the evaluation, but instead suffered from a mood disorder (see

Tr. 36-37). As the plaintiff correctly contends (Doc. 15, p. 5), the law judge

does not explain why the conclusory opinion of a psychologist who examined

the plaintiff just once was accepted over Dr. Gleason, a psychiatrist who has

treated the plaintiff for more than two years. Phillips v. Barnhart, supra, 357

F.3d at 1240.    Such an explanation is especially warranted in this

circumstance, since Dr. Appenfeldt's report was prepared only three months

after the plaintiff began mental health treatment, and her opinion was made

without the benefit of any treatment records except for a treatment plan dated

December 15, 2003 (Tr. 237, 240). Also, Dr. Appenfeldt did not express any opinion concerning whether the plaintiff had mental functional limitations.

Moreover, this latter point is important because, whether the plaintiff suffers from bipolar disorder, or some other mental impairment, is not dispositive; it is the functional limitations, not a diagnosis, that determine whether the individual is disabled. <u>Davis</u> v. <u>Barnhart</u>, 153 Fed. Appx. 569, 572 (11th Cir. 2005)(unpub. dec.). Although the law judge found that the plaintiff suffers from depression, he did not find it to be a severe mental impairment (<u>see</u> Tr. 36, 39).

The term "severe impairment," as used in the regulations, is something of a misnomer. Thus, the court of appeals has stated that "[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." <u>Brady</u> v. <u>Heckler</u>, 724 F.2d 914, 920 (11th Cir. 1984).

The law judge apparently determined that the plaintiff's mental impairment was not severe based on the report of the state agency reviewing

psychologist, Dr. James B. LeVasseur, who opined that the plaintiff suffered from only mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace (Tr. 37, 242, 252).  The law judge reasoned that these opinions were "well supported by the medical evidence of record, [and] are not contradicted by any other substantial evidence" (Tr. 37).

Contrary to the law judge's statement, Dr. LeVasseur's opinions are contradicted by substantial evidence from Dr. Gleason, the treating psychiatrist, who repeatedly assigned the plaintiff GAF scores of 50-55 over a period exceeding two years.  The GAF scale "is a numeric scale that mental health physicians and doctors use to rate the occupational, psychological, and social functioning of adults." McCloud v. Barnhart, 166 Fed.Appx. 410, 413 n.2 (11th Cir. 2006)(unpub. dec.).  As previously explained, scores of 50-55 indicate moderate to serious symptoms or impairment in social or occupational functioning. Diagnostic and Statistical Manual of Mental Disorders. supra (see, e.g., Tr. 277, 278, 279, 283, 290, 302, 317).  These ratings, therefore, clearly demonstrate that Dr. Gleason was of the opinion that

the plaintiff's mental impairment was greater than a slight abnormality having a minimal effect on the plaintiff.

The law judge could not find a non-severe mental impairment based upon the opinion of a non-examining reviewing physician without providing good cause for rejecting Dr. Gleason's opinions.    Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987)("[t]he opinions of nonexamining, reviewing physicians, ... when contrary to those of the examining physicians are entitled to little weight...").[6] The law judge, however, did not state why he rejected Dr. Gleason's specific assessments of the plaintiff's GAF scores.

The Commissioner argues that the GAF scores should be disregarded because "[i]n most instances, the ratings on the GAF scale are .... simply ... a reflection of [a plaintiff's] functioning on that day, and not necessarily an indication that he was disabled within the meaning of the Act" (Doc. 16, pp. 11-12). Although this point is well-taken for a GAF assigned on one or two occasions, this argument lacks force in this circumstance, where Dr. Gleason assigned the plaintiff GAF scores between 50 and 55 more than

---

[6]It is noted that Dr. LeVasseur's report, like Dr. Appenfeldt's, was given early in the plaintiff's mental health treatment. Dr. LeVasseur's opinion also seems to rely heavily on Dr. Appenfeldt's report (Tr. 242, 254).

a dozen times between December 2003, and the administrative hearing in July 2005 (Tr. 277, 278, 279, 283, 289, 294, 297, 302, 305, 314, 317, 320, 387, 390). Thus, this is not a case where a GAF score is indicative of an anomalous bad day. Moreover, the Eleventh Circuit has stated that a failure to evaluate a GAF score can constitute reversible error. See McCloud v. Barnhart, supra, 166 Fed.Appx. at 418.

In sum, the law judge was required to address the GAF scores, and, if he discounted that evidence, he had to articulate his reasons for doing so. Lewis v. Callahan, supra; Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986); Ryan v. Heckler, 762 F.2d 939, 941-43 (11th Cir. 1985). Since the law judge did not explain why he was rejecting the GAF scores, this court cannot meaningfully review the conclusion that the plaintiff had a non-severe mental impairment. Accordingly, I recommend that the matter be remanded for the law judge to address Dr. Gleason's opinions regarding the plaintiff's mental impairment.

The plaintiff has also asserted several other arguments. These arguments do not establish reversible error.

The plaintiff argues that the law judge failed to consider a diagnosis of porphyria cutanea tarda ("PCT"), a skin condition that caused lesions on the plaintiff's body (Doc. 15, pp. 6-8, 11). The plaintiff's physicians are not in agreement that the plaintiff has PCT (compare Tr. 341 with Tr. 348, 351). Although the law judge did not refer to PCT, the law judge did discuss in his decision that the plaintiff had skin lesions, and that most of them had resolved after undergoing phlebotomy treatments (Tr. 32). The law judge also noted that the plaintiff was advised to avoid the sun (id.). Importantly, the law judge included in the pertinent hypothetical question to the vocational expert that the plaintiff "should not be exposed to the sunlight" (Tr. 524), and the vocational expert responded that there were several jobs in the national economy that the plaintiff could perform with that restriction. Moreover, the plaintiff has failed to show that, aside from avoiding exposure to sunlight, there were any other functional limitations arising from the skin condition.

In sum, even though the law judge did not refer to PCT, his consideration of the lesions indicates adequate consideration of the plaintiff's skin condition. In all events, the law judge's inclusion in the operative

hypothetical question of the only identified functional limitation from the skin condition establishes that any error in failing to discuss PCT would be harmless.

The plaintiff also argues that the law judge improperly discredited his mental impairments based on his drug and alcohol abuse (Doc. 15, pp. 12-14). The law judge commented that the plaintiff received psychological intervention in the context of substance abuse and questioned the plaintiff's abstinence (Tr. 36). However, the plaintiff has failed to show that these comments affected the law judge's analysis of the plaintiff's alleged mental disability. Thus, this is not a circumstance where the law judge found that the plaintiff was disabled, but rejected benefits because substance abuse was a contributing factor to the disability. See 20 C.F.R. 404.1535, 416.935. Rather, the law judge, in finding that the plaintiff's mental impairment was not severe, made that determination based upon the opinions of the state reviewing physician and the consultative examiner, and those opinions were not predicated on substance abuse. Therefore, this claim lacks merit.

The plaintiff's final contention is that the law judge failed to give adequate reasons for rejecting the plaintiff's testimony at the administrative

hearing (Doc. 15, pp. 14-17). This argument is properly rejected because it has not been developed in accordance with the scheduling Order, as the plaintiff does not even identify his testimony that allegedly should have been credited by the law judge, or show that, if the testimony were credited, he would have been rendered disabled (see Doc. 12, p. 2)(challenges must be supported by citations to the record of the pertinent facts and by citations of the governing legal standards). Further, the plaintiff cites only one portion of the law judge's credibility determination, and incorrectly suggests that the law judge discredited his symptoms based on the "bare assertion that there is no sufficient objective medical evidence to support" them (Doc. 15, p. 16). In all events, this argument is unpersuasive.

The Eleventh Circuit articulated a number of years ago a standard for assessing allegations of pain and other subjective complaints.    As the court of appeals explained in  Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to

give rise to the alleged pain." This standard also applies to complaints of subjective conditions other than pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11ᵗʰ Cir. 1991). If the law judge discounts the plaintiff's testimony concerning subjective complaints, he must articulate explicit and adequate reasons for doing so. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11ᵗʰ Cir. 2005).

In this case, the law judge referred to the pertinent law governing the assessment of subjective complaints, including the Landry decision (Tr. 28). This demonstrates that he applied the Eleventh Circuit's subjective complaint standard. Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11ᵗʰ Cir. 2002). Further, the law judge gave an adequate and reasonable explanation for rejecting the plaintiff's testimony regarding the severity of his symptoms. Thus, the law judge stated (Tr. 37):

> I recognize that the claimant does suffer from medically determinable severe impairments, which impose some functional limitations; however, the medical evidence does not support the claimant's statements concerning the extent of his impairments and their impact on his ability to work. While the claimant has alleged that his pain, fatigue and depression were severe, there is no mention from his treating physicians (orthopedic or psychiatrist) that his impairments were as severe as he alleged and no physician gave restrictions in reference to the claimants' [sic] impairments that would support

> his allegations. Despite his functional limitations
> alleged, he was able to live by himself, care for his
> personal needs, watch television, drive, and attend
> NA and AA meetings. He also reported on a
> Disability Report dated January 2004, that he was
> able to lift 10 pounds.
>
> Therefore, I find that the claimant is not fully
> credible and is capable of more than he alleges. In
> addition, there have been many instances of non-
> compliance. Being non-compliant with prescribed
> treatment alone can be a basis for a finding of not
> disabled.

In particular, the plaintiff argues that it was improper for the law

judge to reject his testimony regarding the severity of his symptoms based on

a lack of supporting medical evidence (Doc. 15, pp. 14-17). As indicated, this

was one of several considerations, and it is absolutely appropriate to consider

the lack of supporting medical evidence when determining the credibility of

a plaintiff's subjective complaints. See, e.g., Heppell-Libsansky v.

Commissioner of Social Security, 170 Fed. Appx. 693 (11th Cir. 2006) (unpub.

dec.)(the law judge's finding that the plaintiff's description of her symptoms

was "considerably more limited and restricted than [was] established by the

medical evidence, her own contemporaneous statements to treating sources,

and medical source opinions" was sufficient to discredit a plaintiff's

testimony).  The plaintiff's attempt to convert the law judge's determination into a requirement of "objective proof" of pain to support the plaintiff's symptoms (Doc. 15, p. 14), is baseless.  Thus, while the law judge appropriately considered objective medical findings (or the lack thereof) in assessing the plaintiff's subjective complaints, he was not requiring objective evidence of the pain itself.  Therefore, the plaintiff's credibility challenge should be rejected.

IV.

In sum, I find meritorious the plaintiff's argument that the law judge did not evaluate properly the opinions of his treating psychiatrist regarding his mental impairment.  I, therefore, recommend that the decision be reversed and remanded for further consideration.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: NOVEMBER _7_, 2008

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).